UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUSAN PENNY VELLANO,
Administratrix of the Estate of
Joseph Vellano,

                    Plaintiff,

          -v-                                        1:18-CV-944

THE STANDARD LIFE INSURANCE
COMPANY OF NEW YORK,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE STANDARD LIFE INSURANCE
COMPANY OF NEW YORK,

                    Counter-Claimant,

          -v-

SUSAN PENNY VELLANO,
Administratrix of the Estate of
Joseph Vellano,

                    Counter-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

SALAZAR AND ERIKSON LLP                   DANA L. SALAZAR, ESQ.
Attorneys for Plaintiff
573 Columbia Turnpike, Building 2
East Greenbush, NY 12061

EDWARD CASTORINA ATTORNEY AT LAW          EDWARD CASTORINA, ESQ.
Attorneys for Plaintiff
4311 Cobscook Drive
Durham, NC 27707

PIERCE ATWOOD LLP                          BROOKS R. MAGRATTEN, ESQ.
Attorneys for Defendant                    CHERYL LORRAINE
Once Financial Plaza                            ALLEN-RICCIARDI, ESQ.
Providence, RI 02903

DAVID N. HURD
United States District Judge

### MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On July 11, 2018, plaintiff Joseph Vellano ("Vellano" or "plaintiff") filed this action in Supreme Court, Albany County, alleging that defendant Standard Life Insurance Company of New York ("Standard Life" or "defendant") had mis-calculated the amount of short- and long-term disability benefits he should receive under a plan sponsored by his former employer.  Plaintiff's three-count complaint asserted a claim under the Employee Retirement Income Security Act of 1974 ("ERISA") as well as two related claims for relief under state law.  Dkt. No. 2.

On August 9, 2018, Standard Life removed the case to federal court and asserted a trio of counterclaims in an effort to recoup an alleged overpayment of the short-term disability benefits that Vellano had already received.  Dkt. No. 14.  After plaintiff's death on November 3, 2018, Ms. Susan Penny Vellano, his widow and the administratrix of his estate, was substituted as plaintiff in this action.[1]  Dkt. No. 26.  Thereafter, plaintiff stipulated to the dismissal of her state law claims.  Dkt. No. 41.

 After an attempt to settle the matter failed, the parties cross-moved under Federal Rule of Civil Procedure ("Rule" ) 56 seeking summary judgment on the basis of the plan's

---

[1]  The Court will continue to refer to the late Mr. Vellano as "plaintiff" in this action.

language and other supporting documents in the Administrative Record.  *See* Ex. A to Jones Aff., Dkt. No. 30-2 at 1-996 ("AR").  Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**[2]

In 2006, Standard Life issued the short- and long-term employee welfare benefits plans at the core of this dispute:  Group Short Term Disability Policy 430699-B (the "STD policy") and Group Long Term Disability Policy 430699-C (the "LTD policy").[3]  Defendant served as both the claims administrator and the insurance provider for both policies.

Under the STD policy, a qualifying participant is entitled to a <u>weekly</u> benefit that amounts to "70% of the first $2,143 of [the participant's] Predisability Earnings, reduced by Deductible Income."  AR at 40.  The STD policy provides for a maximum weekly benefit of "$1,500 before reduction by Deductible Income" and a minimum benefit of $15.  *Id*.

Under the LTD policy, a qualifying participant is entitled to a <u>monthly</u> benefit that amounts to "70% of the first $8,571 of [the participant's] Predisability Earnings, reduced by Deductible Income."  AR at 10.  The LTD policy provides for a maximum monthly benefit of "$6,000 before reduction by Deductible Income" and a minimum benefit of $100.  *Id*.

Vellano was the CEO of, and a shareholder in, the Vellano Corporation, a subchapter S corporation under the Internal Revenue Code.  Plaintiff stopped working on May 2, 2017 due to the combined effect of several health conditions, including diabetes and

---

[2]  Aside from a few minor quibbles and disagreement over the precise relevance of some quoted language, the parties are in broad agreement about all of the salient facts.

[3]  The original policyholder was an entity named Vellano Brothers, Inc.  After it registered a change of its business name with the New York Department of State, the policies were amended to designate the "Vellano Corporation" as the appropriate policyholder going forward.

myasthenia gravis, a neuromuscular disorder.  Because he could no longer work, plaintiff

applied for disability benefits under the plans administered by Standard Life.

On May 18, 2017, Standard Life approved a weekly STD benefit of $1500 subject to

an estimated $170 offset to account for benefits Vellano received under a New York State

disability program.[4]  AR at 789-91.  Thereafter, defendant approved these weekly STD

payments through the maximum period.  *Id*. at 856.  Plaintiff maintains that the maximum

period under the STD policy should run to November 28, 2017, but defendant calculated this

period as ending August 5, 2017.  In any event, plaintiff received these STD benefits from

June 1, 2017, through October 30, 2017.  *Id*. at 282-83.

On November 3, 2017, Standard Life requested copies of Vellano's Schedule K-1,

Schedule C, Form W-2, or S Corporation federal income tax return for the 2016 tax year so

that it could calculate his LTD benefits.  AR at 190.  Plaintiff's 2016 W-2 form reported

income of $169,562.18.  *Id*. at 445.  However, his 2016 Schedule K-1 form reported that

plaintiff's share of business income amounted to a loss of $480,447.00.  *Id*. at 446.

On December 4, 2017, based on these numbers, Standard Life approved a monthly

LTD benefit of just $100, the minimum monthly benefit under the policy.  AR at 374-77.  This

was so, defendant explained, because a calculation of Vellano's Predisability Earnings in

accordance with the policy's terms amounted to a negative number; *i.e.*, -$25,907.07.  *Id*.  As

defendant further explained, this meant that plaintiff had actually been overpaid $34,470.03

in STD benefits, because the STD policy defined Predisability Earnings in the same way.  *Id*.

However, Standard Life never even made these $100 minimum monthly LTD policy

---

[4]  The STD and LTD policies reduce a participant's benefit payment based on "Deductible Income" received from certain other sources, such as amounts received under state disability law.  AR 19-20, 49-50.

payments to Vellano.  Pl.'s Rule 7.1(a)(3) Statement, Dkt. No. 31-2 ¶ 19.  Instead, on December 21, 2017 and again on January 29, 2018, defendant wrote to plaintiff seeking to collect the $34,000 overpayment.  AR at 859, 380.  Defendant wrote again on February 2, 2018, advising plaintiff that his LTD benefits would terminate on his August 22, 2018, his 70th birthday.  *Id*. at 162.

On April 12, 2018, Vellano's attorney wrote to a Standard Life claims analyst seeking to appeal the calculations of plaintiff's Predisability Earnings and to contest the overpayment issue.  AR at 334-37.  According to plaintiff's counsel, defendant's Predisability Earnings calculation improperly offset his client's pass-through business losses (the negative value) against his W-2 earnings (a positive one).  *Id*.

On May 10, 2018, Standard Life responded with a letter rejecting Vellano's appeal.  AR at 206-08.  According to defendant's letter, the "clear and unambiguous" definition of Predisability Earnings under the STD and the LTD policies required that plaintiff's W-2 income of $169,562.18 be added to his Schedule K-1 loss of -$480,447.  *Id*. at 208. When this number (-$310,884.82) was divided by twelve, it yielded a Predisability Earnings number of -$25,907.  *Id*.  Accordingly, plaintiff was entitled to only the minimum monthly LTD benefit and had in fact been overpaid his weekly STD benefits.  *Id*.

This suit followed.

## III. <u>LEGAL STANDARD</u>

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment is a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED.

R. CIV. P. 56(c)).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a "genuine" dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

"When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Accordingly, summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  *Ward*, 286 F. Supp. 3d at 327 (quoting *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 246 (N.D.N.Y. 2014) (McAvoy, J.)).  "In undertaking this analysis, it bears nothing that 'a district court is not required to grant judgment as matter of law for one side or the other.'"  *Id*.

## IV.  **DISCUSSION**

"A beneficiary of an ERISA plan may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"  *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 280 (E.D.N.Y. 2014) (quoting 29 U.S.C. § 1132(a)(1)(B)).

Although "ERISA itself does not define the standard of review applicable to such

actions," *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996), the U.S. Supreme Court has explained "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

However, if "the plan confers upon the administrator discretionary authority to construe the terms of the plan, a reviewing court should examine the administrator's decision under an abuse of discretion standard." *Rood v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 39 F. Supp. 3d 241, 248 (N.D.N.Y. 2014) (Kahn, J.).  "Under such a standard, an administrator abuses its discretion only when the administrator's actions are arbitrary and capricious." *Id*.

The parties agree that the plan language delegates discretionary authority to Standard Life as plan administrator.  Pl.'s Mem. at 12; Def.'s Mem., Dkt. No. 30-5, 11.  Both the STD and the LTD policy include an "Allocation of Authority" provision that provides:

> Except for those functions which the Group Policy specifically reserves to the Policyholder or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to:
>
> 1.   The right to resolve all matters when a review has been requested;
>
> 2.   The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
>
> 3.   The right to determine:

a.    Eligibility for insurance;

b.    Entitlement to benefits;

c.    The amount of benefits payable; and

d.    The sufficiency and the amount of information we may
reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision
we make in the exercise of our authority is conclusive and binding.

AR at 28, 55.  Accordingly, the standard that must be applied in this case is the more

deferential "arbitrary and capricious" review.

"A decision is arbitrary and capricious if it is 'without reason, unsupported by

substantial evidence or erroneous as a matter of law.'"  *Franzese v. United Health

Care/Oxford*, 232 F. Supp. 3d 267, 275 (E.D.N.Y. 2017) (quoting *Pagan v. NYNEX Pension

Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

As the Second Circuit has explained, the scope of this review is relatively narrow;

courts are not free to substitute their own judgment for that of the insurer or

administrator.  *See, e.g.*, *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83-84 (2d Cir.

2009).  Of course, "[a]pplying deferential standard of review to the administrator's decision

does not mean the administrator will prevail on the merits."  *Rood*, 39 F. Supp. 3d at 249.  "It

means only that the administrator's interpretation of the plan 'will not be disturbed if

reasonable.'"  *Id*. (quoting *Firestone Tire & Rubber Co.*, 489 U.S. at 111).

Importantly, courts must also take into account the conflict of interest that arises

where, as here, the defendant plays the dual role as administrator of the plan and payor of

claims.  *See, e.g.*, *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 233-34 (D. Conn.

2018).  Although this factor does not change the applicable standard of review, the court

"must take [the conflict] into account and weigh [it] as a factor in determining whether there was an abuse of discretion." *McCauley v. First UNUM Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008).

As Vellano readily acknowledges, this case hinges entirely on the interpretation of Standard Life's definition of how Predisability Earnings ("PDE") should be calculated for an S-Corporation Shareholder who suffers a business loss in the relevant tax year.  Pl.'s Mem., Dkt. No. 31-1 at 9.  And as plaintiff readily concedes, plaintiff will be liable for the amount of the counterclaim if defendant's decision to "offset" his share of business losses against W-2 income is upheld as an appropriate interpretation of the policies.  *Id*. at 8.

Vellano has constructed a chart that helpfully illustrates the dispute:

| Item | Plaintiff's Position | Defendant's Position |
|---|---|---|
| W-2 (Compensation per month) | $14,130 | $14,130 |
| Monthly Share of Ordinary Business Income (Schedule K) | $0 | Negative $40,037 |
| PDE | $14,130 | Negative $25,907 |
| 70% of PDE | $9,891 | Negative $18,135 |
| LTD Disability Benefit | $6,000 per month (policy max. & before reduction for Deductible Income) | $100 per month (policy min.) |

Pl.'s Mem. at 8.

How did the parties arrive at these divergent figures?  Although STD benefits are payable weekly and LTD benefits are payable monthly, both policies otherwise define a participant's Predisability Earnings (again, "PDE") in exactly the same way:

> Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work.  However, if you are a Partner, L.L.C.  Owner–Employee,  Sole  Proprietor  or  S-Corporation Shareholder,  your  Predisability  Earnings  will  be  based  on  your

Employer's prior tax year or the Policyholder's prior tax year if you are a P.C. Partner.  Any subsequent change in your earnings will not affect your Predisability Earnings.

A.    Partners, P.C. Partners, L.L.C. Owner–Employees, Sole Proprietors and S-Corporation Shareholders

If you are a Partner, L.L.C. Owner–Employee, Sole Proprietor or S-Corporation Shareholder, Predisability Earnings means your average monthly compensation from your Employer during the Employer's prior tax year.  If you are a P.C. Partner, Predisability Earnings means the average monthly compensation received by your professional corporation from the Policyholder during the Policyholder's prior tax year.  Your average monthly compensation is determined by adding the following amounts as reported on the applicable Schedule K-1, Schedule C, Form W-2, or S-Corporation federal income tax return, and dividing by 12 (or by the number of months you were a Partner, P.C. Partner, L.L.C. Owner–Employee, Sole Proprietor or S-Corporation Shareholder if less than 12):

1.    Your ordinary income from trade or business activity(ies).

2.    Your guaranteed payments, if you are a Partner.

3.    Your net profit from business.

4.    Your compensation (as an officer), salary, or wages, if you are an S-Corporation Shareholder.

AR at 18-19, 48-49.

The parties agree that this subsection applies to Vellano, since he was a shareholder in the Vellano Corporation, a so-called "S-Corp" under the federal tax code.  As this language instructs, a participant's PDE is calculated by "adding the following amounts as reported on the applicable Schedule K-1, Schedule C, Form W-2, or S-Corporation federal income tax return, and dividing by 12."  AR at 18 (emphasis added).

In light of his status as a shareholder in the S-Corp, Vellano received both a W-2 and

a Schedule K-1 for the 2016 tax year.  His W-2 reports income of $169,562.00.  AR at

445.  But his K-1 reports a business loss of $480,447.  *Id.* at 446.  Standard Life says that

these two numbers must simply be added together, which would result in a PDE of <u>negative</u>

$310,885.  And when that negative number is divided by 12 to account for the monthly LTD

benefit, the result is also a negative number:  -$25,097.  Thus, according to defendant,

plaintiff is only entitled to the minimum monthly LTD benefit of $100.

Vellano objects to the idea that this PDE calculation was meant to account for losses

in the form of a negative value.  In plaintiff's view, the business losses reflected on his K-1

should be marked down as a "0," not a negative number.  This is so, plaintiff argues,

because the policy language only contemplates positive values like "income" (*e.g.*, W-2

earnings) and "net profit from business" (in this case, plaintiff argues the "profit" would be

zero).

Vellano considers the result advocated by Standard Life to be bunkum, since in his

view "a person of average intelligence and experience" would not do the math this way.  Pl.'s

Mem. at 12 (citing *Pepe v. Newspaper & Mail Deliveries'-Publishers' Pension Fund*, 559 F.3d

140, 147 (2d Cir. 2009).  According to plaintiff, defendant could have easily included some

kind of additional verbiage about "subtracting loss" if it wanted to account for such a

scenario.  Plaintiff even offers up some suggested language:  "[i]f you are a S-Corporation

Shareholder and your Schedule K-1 for the prior tax year shows a loss, the amount of that

loss will be deducted from your W-2 compensation."  Pl.'s Mem. at 11.

Upon review, Vellano's arguments must be rejected.  For S-Corporation Shareholders,

the PDE calculation gathers up the numerical values for the participant's W-2 wages (in

box 1 of the W-2) and the participant's K-1 income (in box 1 of the K-1) and adds those

values together.  In this case, there is a negative number in box 1 of plaintiff's Schedule K-1, which accounts for plaintiff's share of the business loss.

As an initial matter, it is axiomatic that a positive and a negative integer can be "added" together.  And when the negative integer being added is larger than the positive integer, it obviously follows that the resulting sum would be a negative integer.  Standard Life did not perform any manipulation of the numerical value in box 1 of Vellano's Schedule K-1 to reach this straightforward result.  To the contrary, defendant did nothing more than collect the numerical values from the sources explicitly identified in the policy's PDE definition and add those values together in accordance with the instructions set forth in the plan.

There is nothing mystifying in this result.  There is certainly nothing arbitrary and capricious about it.  Vellano repeatedly insists that Standard Life's use of words like "net profit" and "income" means that those values must always be positive integers, but a quick look at a legal dictionary's definition for "net profit" contemplates that under the right circumstances this value might wind up as a negative.  *See* Profit Definition, *Black's Law Dictionary* ("[T]otal sales revenue less the cost of the goods sold and all additional expenses."); *see also Koken v. Lexington Ins. Co.*, 2006 WL 5377234, at * (E.D. Pa. Feb. 1, 2006) (recognizing same but reaching a different result based on qualifying language).

Vellano's argument about the "Summary Plan Description" fares no better.  According to plaintiff, this short form document included with both policies lists the circumstances that would offset or otherwise reduce the benefits payable to a participant.  Pl.'s Mem. at 17; *see also* Ex. A to Castorina Aff., Dkt. No. 31-4, 15.

As Vellano explains, a Department of Labor ("DOL") regulation requires that these summary descriptions included with ERISA plans disclose "circumstances which may result

in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or

recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably

expect the plan to provide.  29 C.F.R. § 2520.102-3(l).

According to Vellano, "[r]educing benefits by offsetting business losses against W-2

income is precisely the kind of circumstances which must, under the cited DOL regulations,

be clearly and understandably set forth in the summary plan description.  Pl.'s Mem. at 17.

Standard Life responds that Vellano's citation to this DOL regulation is a red herring,

since we aren't talking about a "reduction" or an "offset" to a participant's benefits but merely

a way of calculating a participant's PDE under the plan itself.  Defendant argues that

plaintiff's contrary method of calculating PDE would be subject to improper

manipulation.  Def.'s Opp'n, Dkt. No. 37 at 6.  As defendant explains, the reasoning behind

the special rule for S-Corporation Shareholders and other business owners is simple but

necessary:  this class of participants is in a position to fudge the PDE calculation.  *Id*.

This argument is particularly compelling.  "Pass through entities, such as partnerships,

S corporations, common trust funds, and nonpublic mutual funds, generally do not pay

income taxes at the entity level, but instead pass their tax liabilities on to the ultimate

taxpayers—generally individuals."  *William L. Rudkin Testamentary Trust v. Comm'r*, 467

F.3d 149, 157-58 (2d Cir. 2006); *see also Gitlitz v. Commissioner*, 531 U.S. 206, 209 (2001)

("Subchapter S allows shareholders of qualified corporations to elect a 'pass-through'

taxation system under which income is subject to only one level of taxation.").

Standard Life contends that the formulation it applied to Vellano is appropriate

because it better captures the "true" PDE of this kind of plan participant.  Def.'s Opp'n

at 7.  For instance, it prevents a sole proprietor who anticipates that he will be submitting a

disability claim from just inflating his ordinary income, thereby reducing profits and possibly

even incurring a loss to his business.  *Id.* at 6.

Under Vellano's formulation, a business loss of this type would be ignored when

determining PDE because, at worst, it would be reduced to a zero.  But this results in a

potential windfall—a participant who takes a business loss would receive favorable tax

treatment for the loss while simultaneously inflating his possible entitlement to disability

benefits under the plan.  A review of how PDE is calculated for plan participants who are not

in the same privileged confirms that the distinction matters:

> B.   All Other Members
>
> Predisability Earnings means your monthly rate of earnings
> from your Employer, including:
>
> 1.   Commissions averaged over the preceding 12 months
>       or  over the period of your employment if less than 12
>       months.
>
> 2.   Bonuses averaged over the preceding 36 months or
>       over the period of your employment if less than 36
>       months.
>
> 3.   Shift differential pay.
>
> Predisability Earnings does not include:
>
> 1.   Overtime pay.
>
> 2.   Any other extra compensation.
>
> If you are paid on an annual contract basis, your monthly rate
> of earnings is one-twelfth (1/12th) of your annual contract
> salary.  If you are paid hourly, your monthly rate of earnings
> is based on your hourly pay rate multiplied by the number of
> hours you are regularly scheduled to work per month, but not
> more than 173 hours.  If you do not have regular work hours,
> your  monthly  rate  of  earnings  is  based  on  the  average
> number of hours you worked per month during the preceding

> 12 calendar months (or during your period of employment if less than 12 months), but not more than 173 hours.

AR at 18-19, 48-49.

Unlike shareholders and other plan participants who own a piece of the business, a regular employee receives a monthly disability benefit based on a PDE that mirrors their regular salary.  In other words, Standard Life is correct in its claim that the special rule included in the plan for shareholders and other business owners intentionally captures additional components of a participant's earnings (or losses) that, if excluded, might paint a misleading picture of the individual's pre-disability earnings.

To be clear, a different result might still have been appropriate if Standard Life had felt itself entitled to, say, insert the minus sign in front of the number found in box 1 of Vellano's Schedule K-1 or otherwise manipulate the business loss figure to reach a negative value.  But where, as here, the administrator has applied the plain language of the policy in a straightforward manner, it is impossible to call its interpretation anything other than reasonable.  *Cf. Griffin v. N.Y. State Nurses Ass'n Pension Plan & Benefits Fund*, 757 F. Supp. 2d 199, 215-17 (E.D.N.Y. 2010).  In short, given the undisputed facts and the plain and unambiguous language of the plan, summary judgment is warranted in favor of defendant.

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Vellano's motion for summary judgment is DENIED;

2.  Standard Life's motion for summary judgment is GRANTED;

3.  Vellano's complaint is DISMISSED; and

4.  Standard Life is entitled to judgment on its counterclaim in the amount of

$33,475.51.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.


Dated:  August 4, 2020
         Utica, New York.

_____
United States District Judge